OPINION OF THE COURT
Joy Campanelli, J.
By motion filed September 13, 2015, defendant Luis Cintron moves for an order pursuant to section 50-a of the Civil Rights Law for in camera inspection, and/or by subpoena, if appropriate, of any and all records contained in the personnel files or otherwise, indicating prior or current internal and civilian complaints, investigations, or reports which allege corruption, threats, theft, falsehoods (in whatever form), illegal arrests and/or searches, fabrication of charges and/or evidence, use of excessive deadly or nonlethal force, dishonesty and improper tactics such as conduct unbecoming an officer, neglect of duty, or false arrest, including but not limited to personnel files, internal affairs files and Civilian Complaint Review Board (CCRB) proceedings of the New York Police Department (NYPD) for New York City Police Department employees Officers Michael Kobus and Vincent Lindner.
By notice of cross motion dated September 25, 2015, nonparty CCRB seeks an order pursuant to CPL 240.50 and 340.30 shielding confidential CCRB records from disclosure to the defendant. The New York City Police Department submits an affirmation in opposition to the defendant’s motion and a memorandum of law dated and served on November 5, 2015.
In April of 2015 defendant had previously filed an almost identical motion seeking the same relief as requested herein. By decision dated May 19, 2015 this court denied the defendant’s application for failure to place nonparty Police Department, CCRB and Police Officers Kobus and Lindner on notice. This court did not reach the merits of the defendant’s application, finding that the defendant had failed to give proper notice to the interested parties, New York City Police Department, CCRB and Police Officers Kobus and Lindner.[1]
Defendant is charged with one count each of disorderly conduct (Penal Law § 240.20 [1]), a violation, disorderly *652 conduct (Penal Law § 240.20 [3]), a violation, and two counts of harassment in the second degree (Penal Law § 240.26 [1]), a violation.
The accusatory instrument executed by Arresting Officer Kobus states that on September 25, 2014 at 2839 West 33rd Street, Kings County, Officer Kobus saw the defendant simulate a firearm, in that the defendant grabbed his waistband, and stated to Officers Kobus and Lindner,
“in sum and substance, that when defendant had defendant’s gun, defendant would have a bullet for deponent and Police Officer Lindner, and that deponent repeatedly told defendant to leave the above location and subsequently defendant did scream, curse and state to deponent, in substance, Tuck you,’ defendant is not going anywhere, causing a number of individuals to gather . . . that the above described actions caused deponent to become alarmed and annoyed.”
Civil Rights Law § 50-a provides in relevant part:
“1. All personnel records used to evaluate performance toward continued employment or promotion, under the control of any police agency ... of individuals defined as police officers . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer . . . except as may be mandated by lawful court order.
“2. Prior to issuing such court order the judge must review all such requests and give interested parties the opportunity to be heard.[2] No such order shall issue without a clear showing of facts sufficient to warrant the judge to request records for review.”
In this matter the subject police officers, whose records are sought, the CCRB and the New York City Police Department, where personnel and other related files may be deposited, are all interested parties. Service on the District Attorney’s office is confirmed by the “stamping” of a filed copy of the motion papers. The defendant served a copy of his motion by deliver *653 ing a copy of his documents “personally to Investigator John, at the New York City Police Department, Legal Documentation Production Unit, Room 110C, One Police Plaza, New York.” The Police Department has submitted its opposition papers. Likewise, CCRB has acknowledged receipt of the motion papers and has filed opposition papers in the form of a cross motion.
Defendant’s proof of notice on the interested Police Officers is woefully lacking. Defendant’s counsel has submitted an affidavit by one of its employees, Samuel Rosenberg, wherein he affirms that on September 3, 2015 he attempted to deliver documents to their places “of employment at the Brooklyn South Narcotics Unit located at 860 Remsen Avenue, Brooklyn, NY 22236 [sic], where service thereof was unable to be processed.” Defendant files an affidavit of attempted service upon Officer Kobus with an annexed printout of a photograph depicting a nondescript front of a building identified as 860A Remsen Street, Brooklyn.[3] Also annexed to the defendant’s papers is a letter from attorney Ying’s paralegal, dated September 11, 2015, which references in its body Officer Kobus but omits Officer Lindner. The letter, addressed to NYPD Legal Room HOC at One Police Plaza, New York, asks for assistance in serving Officer Kobus only. The letter mentioned that the defendant had been provided with 860A Remsen Avenue as the home precinct of Officer Kobus, that an unsuccessful attempt had been made to serve Officer Kobus, and that an unidentified desk sergeant at an unidentified place (Brooklyn South) refused to accept papers. The paralegal then explained that she had contacted by telephone an unidentified officer at Brooklyn South, who “was playing games.” The paralegal represented in the letter to the NYPD that this officer had told her that since the NYPD had been served with papers, they would be forwarded to the police officer. The paralegal then wrote, “This was said off the cuff and definitely not official enough to ensure service.”
The movant has failed to establish that the subject police officers have consented to the release of the confidential information pursuant to Civil Rights Law § 50-a (1), or have received notice and the opportunity to be heard in this application pursuant to Civil Rights Law § 50-a (2). (See People v James, 46 Misc 3d 1219[A], 2015 NY Slip Op 50125[U] [Sup Ct, Kings County 2015]; compare Telesford v Patterson, 27 AD3d 328 [1st Dept 2006] [where inmate seeking FOIL information on a police *654 officer was obligated to notify police officer prior to any in camera review of personnel records]; Blanco v County of Suffolk, 2006 NY Slip Op 30583 [U], *3 [Sup Ct, Suffolk County, Nov. 9, 2006] [where party bringing civil action for assault seeking employment and internal affairs investigation records was required to give notice to officers because “police officers who are the subject of an internal investigation stand to be inequitably affected by any determination . . . and are entitled to an opportunity to be heard before the court conducts an in-camera review of any such file”]; compare also Matter of Dunnigan v Waverly Police Dept., 279 AD2d 833 [3d Dept 2001] [where inmate bringing an article 78 proceeding seeking to compel police officer’s personnel records under FOIL must give interested parties (police officer) an opportunity to be heard].)
Surprisingly, New York case law is almost totally devoid of any case law which gives guidance to that section of Civil Rights Law § 50-a (2) charging the court to “give interested parties the opportunity to be heard.” It could be argued that the submission to the court of an application for a subpoena duces tecum and/or to obtain and review personnel records of a police officer would put the required notice of opportunity to be heard under the purview of service of subpoena (see CPLR 308 [service requirements]; see also CPLR 2307, 3120). Yet, the plain reading of the statute simply states only that the interested officer must be given “an opportunity to be heard.” No other guidelines are offered by the statute. Thus, in Frisillo v State of New York (185 AD2d 616 [4th Dept 1992]), the Court rejected the requirement of personal service of CPLR 308 (5) after the applicant showed to the Court that service was impracticable under CPLR 308 (1), (2) or (4). However, because the applicant attempted to effectuate service under CPLR 308 (5), the Court found under the circumstances of that case, the fact that the order to show cause was delivered to the defendant’s home and left there was sufficient for notice. “The statute does not require that an interested officer be personally served with notice, but requires only that the officer be given an opportunity to be heard” (Frisillo at 617 [referencing Civil Rights Law § 50-a]).
Indeed, “in matters of statutory . . . interpretation, legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [enactors] . . . [t]o that end, ascertaining legislative intent involves considering the spirit and purpose of the act and the objects to *655 be accomplished.” (Matter of Sedacca v Mangano, 18 NY3d 609, 615 [2012] [internal quotation marks and citations omitted].) The court’s primary consideration is to discern and give effect to the legislative intention. (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106 [2012].) Thus, in construing legislation, the court should neither limit nor extend the plain language of the statute, and, whenever practicable, effect must be given to all the language employed. The court’s duty is to presume that each clause has a purpose. (Cohen v Boyland, 1 NY2d 8, 14 [1956]; Wright v Sokoloff, 110 AD3d 989 [2d Dept 2013].) And where “the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation,” and when the words have a definite and precise meaning, the courts may not go elsewhere “in search of conjecture in order to restrict or extend the meaning” (Meltzer v Koenigsberg, 302 NY 523, 525 [1951]; see also Viruet v City of New York, 181 Misc 2d 958 [Sup Ct, Bronx County 1999]).
Given the specific concern of the legislature in enacting Civil Rights Law § 50-a in order to carve out discovery exceptions for a class of municipal employees (see Matter of Gannett Co. v James, 108 Misc 2d 862 [1981], affd 86 AD2d 744 [4th Dept 1982]), any review of “notice” in these types of proceedings, which impact proper opportunity to be heard, will be viewed narrowly and carefully scrutinized. Suffice it to say, the court will more readily and quickly acknowledge proper notice on an interested party when the applicant adheres closely to the legislative standard of service under CPLR 308.
Based on the facts presented to this court as summarized above, the defendant has failed to give proper notice of his applications as required by Civil Rights Law § 50-a (2) to Officers Kobus and Lindner.
Defendant’s motion pursuant to Civil Rights Law § 50-a for an order granting an in camera inspection, and/or for a judicial subpoena duces tecum for extensive personnel records and files relating to Police Officers Kobus and Lindner, is denied.

. Several months after receipt of the May decision dismissing defendant’s motion for failure to give proper notice, the defendant brought a similar motion requesting personnel files and CCRB and police department records of a police officer in a September 2014 incident in which the defendant was also arrested and charged with misdemeanor crimes. (Docket *652 No. 2014KN066686.) Again, under this docket, defendant failed to give proper notice to interested parties, and by decision dated July 31, 2015, this court also denied the application without reaching the merits of the defendant’s motion.

2. See CPLR 1001 (Necessary joinder of parties), 1003 (Nonjoinder and misjoinder of parties).

. The affidavit also alleges service of the papers on Iris Ying who happens to be the defendant’s individually assigned attorney.